UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEON BRIGHT,

    Plaintiff,

v.                                                            CASE NO. 8:18-cv-1123-T-23CPT

CITY OF TAMPA, et al.,

    Defendants.
_____/

**ORDER**

    Proceeding *pro se* and *in forma pauperis*, Leon Bright sues the defendants because of their alleged participation in Bright's arrest at a public library in Hillsborough County. A January 2, 2019 order dismisses with prejudice Bright's claims against two defendants — a state court judge and an assistant state attorney — and dismisses without prejudice the balance of the original complaint because Bright failed to state a claim under Rule 8, Federal Rules of Civil Procedure. An April 15, 2019 order dismisses without prejudice Bright's amended complaint because he failed to correct the deficiencies specified in the January 2 dismissal order. The April 15, 2019 order instructs Bright not to "add a claim or include a defendant not included in Bright's original complaint (Doc. 1)." Bright amends (Doc. 83) the complaint and the remaining defendants move (Docs. 88, 92) to dismiss.

**BACKGROUND**

In the second amended complaint, Bright alleges that on November 17, 2017, Brian Mahoney, a library employee, "demanded" Bright to leave the John Germany Library while Bright was conducting research on the second floor. Unaware of Mahoney's status as the "library senior," Bright refused to leave, and Mahoney "stormed away." (Doc. 83 at 6) Notwithstanding Bright's alleged nescience of Mahoney's employment with the library, Harold McCray's status as a law enforcement officer was unmistakable when McCray arrived, accompanied by Mahoney, at Bright's desk. Officer McCray approached Bright, "stood within 2-3 feet of [Bright's] left side," and sternly ordered Bright to gather his belongings and leave. (Doc. 83 at 7) Bright alleges that he "immediately 'complied,'" stood, and attempted to gather his effects, but as he "turned to face [McCray and Mahoney] and move toward the stairway, McCray stood closer to [Bright] leaving no space for [Bright] to [exit] the desk cubic[le] area." (Doc. 83 at 7) Bright interpreted McCray's conduct as an "attempt to blockade" Bright so that he lacked the ability to comply with McCray's order. Fearing that McCray might harm him, Bright "turned his back to McCray and decided to log off [the] computer." (Doc. 83 at 7)

Bright alleges that, as he "logged off," McCray forcefully applied his knee to Bright's back, placed an "arm-lock maneuver around [Bright's] throat," and ordered Bright to "stop resisting." (Doc. 83 at 7) McCray's "maneuver" allegedly caused "[Bright's] head and neck [to] jerk[ ] backwards and then downward, as both his feet lost balance," and the maneuver "airlift[ed Bright's] body off the ground." Bright

alleges that McCray's "maneuver" inflicted serious bodily injuries and that, because he lost his ability to breathe, Bright "lost conscious[ness]." (Doc. 83 at 7) According to Bright, when he regained consciousness, several Tampa Police Department officers surrounded him. Bright alleges that officers Gordon and Tindall "held [him] down by force as [officer] Amanda K. Baranowski used a blood draw device . . . [to] collect[ ] blood samples."[1] (Doc. 83 at 7) Also, Bright alleges that despite his forbearing resistance, several unnamed officers "hog tied [Bright] with metal cuffing devices and dragged [him] down stairs with force."[2] (Doc. 83 at 8)

Some time after the library episode, Bright alleges that he attempted to obtain surveillance footage of the incident, but the library explained that "the cameras on [the] second floor failed to record." (Doc. 83 at 8) Bright "took this to mean" that the defendants either destroyed evidence or acted "in gross negligence in allowing the . . . video cameras to fail." (Doc. 83 at 8)

The seconded amended complaint includes a dozen defendants and six counts. Specifically, Bright sues the defendants (1) for "assault and battery . . . 4th and 14th Amend. Violation" — in essence, for the officers' application of excessive force; (2) for false imprisonment; (3) for Tampa's ratification of unconstitutional practices and policies; (4) for conspiracy to deprive Bright of constitutional rights;

---

[1] The amended complaint remains unclear about the sequence of events, that is, whether the officers removed Bright's blood before he lost consciousness, during his unconsciousness, or after he regained consciousness and was detained. Understood in context, Bright seems to allege that the officers removed blood after Bright regained consciousness.

[2] The complaint states that Bright forbore resistance to arrest, but later the complaint explains that Bright "was only defending himself." (Doc. 83 at 18)

(5) for various forms of negligence; and (6) for "excessive force . . . and . . . selective enforcement."[3] The plaintiff and four of the defendants stipulate (Doc. 108) to dismissal, but the remaining defendants move (Docs. 88, 92) to dismiss the second amended complaint.[4] Although Officer Baranowski separately moves (Doc. 92) to dismiss, the remaining defendants' motions to dismiss contain substantially similar arguments and warrant simultaneous treatment.[5]

First, the defendants argue that Bright fails to state a claim for a First Amendment violation in Count I. According to the defendants, Officer McCray lawfully and with probable cause arrested Bright, and "the facts indicate that Officer McCray arrested Plaintiff for refusing to leave the library and not due to anything [that the] Plaintiff said." (Doc. 88 at 4) Regarding Bright's false imprisonment claim, the defendants argue that Officer McCray had probable cause to arrest Bright and that Bright states no claim against four of the officers because he alleges that

---

[3] In Counts I–II and IV–VI Bright sues the City of Tampa, McCray, Amanda Baranowski, Kelvin John, John Tindall, and John Gordon, and Bright sues "each Defendant in [their] personal and official capacity." (Doc. 83 at 9) Bright's claims against the officers in their official capacities constitute claims against Tampa. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal citations and quotations omitted). Although Bright alleges in Count III violations by Tampa and Hillsborough County only, Tampa is the only named defendant in Count III that remains in this action.

[4] The remaining defendants are Tampa and five law enforcement officers. Also, Bright moves again (Doc. 97) to amend the complaint, which motion the defendants oppose (Doc. 101), and Bright moves (Doc. 119) for summary judgment and other ancillary or procedural relief.

[5] Baranowski requests dismissal of Counts I, II, IV, V, and VI. (Doc. 92) The other defendants request dismissal of Counts III, IV, V, and VI. (Doc. 88)

McCray was the only officer present during Bright's alleged false imprisonment. (Doc. 88 at 6)

Next, the defendants argue that Bright inadequately alleges a "failure to train" claim (1) because no "obvious training" scenario existed, (2) because Tampa maintained no unconstitutional policy, and (3) because the amended complaint includes "no allegations that any police department administrator approved" or ratified McCray's use of force. (Doc. 88 at 8) Also, the defendants argue that Bright unsuccessfully asserts a conspiracy claim because Bright employs "vague and general allegations" instead of particular facts that permit a reasonable inference of conspiracy. (Doc. 88 at 10) Similarly, the defendants argue that Bright alleges insufficient facts to establish a claim against Tampa for negligently retaining McCray, and the defendants argue that "each defendant officer is entitled to qualified immunity" for Bright's negligence claim. (Doc. 88 at 11)

Addressing Bright's negligent supervision claim, the defendants argue that Bright fails to allege that McCray acted outside the course of employment, which allegation is necessary to state a claim for negligent supervision. (Doc. 88 at 12) And against Bright's "negligent failure to intervene" claim, the defendants argue that Bright's claim is inconsistent with his factual account that McCray was the only officer present during Bright's arrest. According to the defendants, if no other officers were present during Bright's arrest, the officers lacked the ability to intervene.

The defendants request dismissal of Bright's selective enforcement claim because Bright fails to allege that "there were any other computer users on the

incident date" and because Bright includes no facts suggesting that the library, any officer, or another entity selectively enforced a rule against Bright. (Doc. 92 at 9) Finally, the defendants invoke sovereign immunity to address Bright's Florida constitutional claim, and the defendants assert Bright's disqualification to state a claim under Section 961.06, Florida Statutes. (Doc. 92 at 9–10)

Opposing the defendants' motions to dismiss, Bright argues that "Defendants all waive their opportunity to contest any and all 'excessive force, . . . battery, [and] assault defenses.[']" (Doc. 94 at 2) Also, Bright argues that no probable cause existed for McCray to initiate Bright's arrest. In support, Bright argues that, because his putative trespassing occurred "outside of McCray's presence," McCray lacked a basis for probable cause, and nothing "indicates anyone had the authority to compel [Bright] to leave" the library.[6] (Doc. 94 at 2) Further, Bright argues that McCray "used a 'trespass' verbal warning . . . as a ruse to . . . violently assault" him, to "hold [him] against his will," and "to enable the arrest for trespassing." (Doc. 94 at 3)

Like Bright's amended complaint, Bright's response iterates his contention that the defendants failed to preserve video evidence of the events and states (in conclusory fashion) that he "stated valid claims invoking the First Amendment."[7] (Doc. 94 at 5, 10) Finally, Bright contends that the defendants' invocation of

---

[6] Also, Bright, a self-professed "black Hebrew Israelite-Tribe of Judah-Lion," argues that the decision to evict Bright from the library was motivated by racial animus and "based upon [Bright's] swag." (Doc. 94 at 2–3, 5, 10)

[7] Bright's claim for intentional infliction of emotional distress merits no consideration because the second amended complaint failed to state that legal theory as a basis for relief. (Doc. 82 at 4)

- 6 -

probable cause warrants no consideration because discovery is lacking in this action and no record evidence establishes the existence of probable cause.

## DISCUSSION

Most of the allegations in the second amended complaint fail to state a claim. Some fail because Bright insufficiently or implausibly pleads the facts or legal elements necessary to establish a valid claim. Others fail because Bright alleges no claim that is cognizable under federal or state law. However, Bright states a claim for excessive force and battery against the law enforcement officers. Because Bright haphazardly scatters his claims across the amended complaint, the claims warrant seriatim treatment according to their appearance in each count of the complaint.

### *I. Count I*

Under 42 U.S.C. § 1983, to state a claim against each officer in the officer's individual capacity, Bright must allege that the officers, acting under the color of law, violated a constitutional right. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). And because the defendants appear to raise a qualified immunity defense to Bright's Section 1983 Fourth Amendment claim,[8] Bright must allege that the officers violated a clearly established right. *Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997).

In Count I (and elsewhere), Bright alleges that McCray and other officers violated his Fourth and Fourteenth Amendment rights by unlawfully arresting him

---

[8] (Doc. 88 at 5) (citing *Rushing v. Parker*, 599 F. 3d 1263, 1265 (11th Cir. 2010), and positing that Bright needs to allege facts undermining the existence of "arguable probable cause.")

and using excessive force.[9] Although Bright alleges Fourteenth Amendment violations, "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, aside from the dismissal of Bright's Fourteenth Amendment assertion, the Fourteenth Amendment warrants no consideration in the analysis of Bright's claim.

The Fourth Amendment guarantees Bright the "right . . . to be secure . . . against unreasonable searches and seizures." To plead a Fourth Amendment violation, Bright must allege that the law enforcement officers unreasonably arrested Bright. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). An arrest is unreasonable if performed without probable cause or if performed with excessive force. Probable cause exits "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

However, for qualified immunity to apply to an arresting law enforcement officer, the officer needs only "arguable probable cause" to perform the arrest. *Lee v.*

---

[9] Bright alleges excessive use of force in Counts III, IV, and VI as well.

*Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).  Arguable probable cause, an objective standard, exists for Officer McCray if a "reasonable officer[ ] in the same circumstances and possessing the same knowledge . . . could have believed that probable cause existed to arrest."  *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (*quoting Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir.1998)).

Although Bright asserts the absence of probable cause during his arrest, Bright alleges that after Mahoney ordered Bright to leave, Bright refused, and Mahoney returned with Officer McCray.  Section 810.08, Florida Statutes, prohibits trespassing, which includes "remain[ing] in any structure" without authorization or license.  Further, the facts establish that Mahoney left Bright and returned with McCray, an action that unmistakably shows that Mahoney informed McCray of Bright's trespassing.  From the facts alleged, the reasonable inference arises that McCray had probable cause — and necessarily arguable probable cause — to believe that Bright was trespassing at the library.  Mahoney asked Bright to leave; Bright refused.

Contrary to his assertion, Bright's understanding of Mahoney's authority is irrelevant to whether a law enforcement officer would reasonably infer that Bright was trespassing under the circumstances.  Also contrary to Bright's assertion, "[i]t is irrelevant . . . that some or all of the officers in this case may have acted with malicious purpose . . . so long as probable cause exists to believe that [Bright] committed some offense, any offense, no matter how minor."  *Perez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 917 F. Supp. 2d 1261, 1267 (S.D. Fla. 2013).  Mahoney told

McCray about the trespass violation, and Bright's continued presence in the library without authorization establishes that McCray objectively had probable cause to believe that Bright was committing an offense. Therefore, probable cause supported the reasonableness of McCray's arrest. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Because Bright alleges that only McCray initiated his arrest, no liability can attach to the other officers for detaining Bright without probable cause.

Although arguable probable cause existed, Bright further alleges that McCray applied "extreme[ly] violent" force by slamming Bright to the ground despite Bright's non-resistance. (Doc. 1 at 7) And Bright alleges — in a chronologically murky narrative — that the other officers applied excessive force during his detention even though Bright did not resist. (Doc. 83 at 18) "The Fourth Amendment's freedom from [objectively] unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (*citing Graham v. Connor*, 490 U.S. 386, 394–95 (1989)); *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010).[10] To determine the objective reasonableness of force, a court examines, among other things, (1) the need to apply force, (2) whether the force applied was incommensurate to the amount needed, (3) the extent of the arrestee's injury,

---

[10] "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

and (4) whether the officer applied force "maliciously." *Andrews v. Scott*, 729 F. App'x 804, 810 (11th Cir. 2018); *see also Jones v. Fransen*, 857 F.3d 843, 853 (11th Cir. 2017) (specifying a more comprehensive list of factors that inform the reasonableness of the application of force).

The "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). And an officer can apply excessive force after "the arrest ha[s] been fully effected, the arrestee completely secured, and all danger vitiated." *Galvez v. Bruce*, 552 F.3d 1238, 1245 (11th Cir. 2008). Further, no requirement exists for a plaintiff, whose view arises amid a chaotic episode of excessive force, to identify with specificity the force that each officer applied. *See Velazquez v. City of Hialeah*, 484 F.3d 1340 (11th Cir.2007) (rejecting the argument "that the force administered by each defendant in a collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force.").

Bright describes the officers' conduct as "extreme," "violent," "unprovoked," and "excessive," (Doc. 83 at 23), and Bright alleges supporting facts. Even though he ostensibly forbore resistance to arrest, Bright alleges that McCray violently "assaulted" him by slamming him to the ground, that the law enforcement officers dragged him down a flight of stairs and "hog tied" him, and that each officer

"violent[ly] attack[ed]" him.[11] (Doc. 38 at 7–8) Facts might surface during discovery that demonstrate the falsity of Bright's allegations, but Bright alleges conduct that was arguably gratuitous, disproportionate, and excessive given Bright's minor offense and assuming his non-resistance. *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (holding that a law enforcement officer applied excessive force by slamming the plaintiff onto the hood of her car even though the plaintiff posed no threat to the officer). Bright plausibly alleges a claim for excessive force against each officer in an individual capacity.[12] No officer is entitled to qualified immunity at this juncture.

Also, Bright plausibly alleges a state-law battery claim against each officer. Under Florida law, although a law enforcement officer enjoys limited statutory immunity, if the officer's application of force is "clearly excessive," liability might attach. A battery claim against a law enforcement officer receives analysis under a "similar standard" to that employed under the Fourth Amendment. *Sullivan v. City of Pembroke Pines*, 161 Fed. App'x. 906, 911 (11th Cir. 2006) (per curiam). Because Bright sufficiently alleges that the officers applied excessive force and because his description permits a tentative inference of "bad faith" and malice, Bright's battery claim is not subject to dismissal. Section 768.28(9)(a), Florida Statutes; *Richardson v.*

---

[11] Because Bright's allegations describe a "collective beating" and lack specificity about which law enforcement officers dragged him down the stairs, Bright successfully alleges an excessive use of force against each officer.

[12] Bright unsuccessfully alleges excessive force against Tampa because Bright fails to establish an official policy or authoritative decisionmaker was the "moving force behind the constitutional violation." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003). Bright's inability to allege municipal liability receives further analysis under Count III.

- 12 -

*City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987). Because Bright alleges facts that establish that the officers committed a tort "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights," Bright's battery claim against Tampa — a "subdivision" of the state — requires dismissal because Tampa is entitled to sovereign immunity. Section 768.28(9)(a), Florida Statutes ("The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights[.]"); *see also Jean-Baptiste v. Jones*, 424 F. Supp. 3d 1251, 1262–63 (S.D. Fla. 2019) (dismissing the plaintiff's battery claim because the officer acted in bad faith or with malicious purpose).

Finally, in Count I, Bright alleges violations of the First Amendment. Bright fails to trace a causal connection between constitutionally protected speech and the defendants' allegedly retaliatory conduct, *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011), so Bright fails to state a First Amendment violation.

Count I impermissibly includes three claims. The motion to dismiss Count I is **GRANTED-IN-PART**, and Count I is **DISMISSED WITH PREJUDICE** to the extent that the count alleges a First Amendment violation and to the extent that the count alleges a claim against Tampa. However, Bright alleges excessive force and battery claims against each officer in their individual capacity and to that extent the motion to dismiss is **DENIED**.

## *II. Count II*

Count II alleges that the defendants falsely imprisoned Bright. In Florida, "false arrest and false imprisonment are different labels for the same cause of action." *Rankin v. Evans*, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998) (*quoting Weissman v. K–Mart Corp.*, 396 So.2d 1164, 1164 n. 1 (Fla. 3d DCA 1981)). And "probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest." *Rankin*, 133 F.3d at 1435 (citing *Bolanos v. Metropolitan Dade County*, 677 So.2d 1005, 1005 (Fla. 3d DCA 1996). Because McCray's arrest features probable cause (as addressed above), Bright unsuccessfully alleges false imprisonment. Count II is **DISMISSED WITH PREJUDICE**.

## *III. Count III*

Count III alleges that Tampa "condones and ratifies" (1) the unlawful arrest of citizens through the use of excessive force, (2) officers' retaliation against citizens for exercising rights under the First Amendment, and (3) the destruction of "any and all video surveillance" evidencing unlawful arrests. Also, Bright appears to — or to attempt to — assert a failure to train claim against Tampa.

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), rejects the attachment of liability to a local government under Section 1983 on the basis of *respondeat superior*. In other words, Tampa incurs no liability solely because an officer incurs liability. Rather, liability attaches only if "execution of [Tampa]'s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

Beyond conclusory assertions, Bright fails to provide any factually or legally plausible allegation that Tampa held an official policy sanctioning the arrest of citizens in the manner Bright alleged or that a relevant Tampa official was aware that constitutional violations had transpired or were likely to transpire and nevertheless ratified the conduct. Bright cites no prior complaint or lawsuit against Tampa for a similar unconstitutional policy or custom, and Bright alleges no plausible fact establishing that a Tampa administrator approved of McCray's use of force or knew that any of the defendant officers presented a danger to the public or were otherwise unfit.

Bright's injury resulted from a singular episode, and Bright fails to attribute any reasonable fault connected to "a person with authority to make policy decisions." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) ("[A] single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability [under Section 1983], and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.").

Similarly, to the extent that Bright attempts to allege Tampa's failure to train, Bright alleges insufficient facts to demonstrate the requisite "limited circumstances" that state a claim — namely, that Tampa's "failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional

rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Count III is **DISMISSED WITH PREJUDICE**.

### *IV. Count IV*

Count IV, divided into two "parts," alleges conspiracies. "Part one" alleges that McCray conspired with two library employees by (1) "fabricating false facts" in an attempt to "cover[] up" the defendants' violent assault; (2) conspiring to deprive Bright of his right to freedom from false imprisonment; (3) destroying evidence "by either[ ] inadvertent or advertent means"; and (4) conspiring "to cause [Bright] to be stricken with fear of immediate physical injury, no protection, defamation, bad character, extreme terror, mental anguish, loss of liberty, and all emotional and financial distresses." (Doc. 83 at 14–15)

"To allege a conspiracy, a plaintiff must make particularized allegations that are more than vague or conclusory." *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007) (quotation omitted). In Bright's conspiracy count, Bright alleges nothing beyond vague and conclusory assertions, and no plausible factual detail supports his claim. Bright's failure to allege with sufficient particularity a conspiracy claim merits dismissal of the claim. *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) (dismissing conspiracy claim for failure to state a claim because the plaintiff failed to include factual allegations that sufficiently supported a claim for conspiracy).

Other support for dismissing Bright's conspiracy claim includes Bright's alleging in "part two" a claim against the defendants Paul Jeske and Carolay

Vargas that the April 15 order expressly forbids. Although Bright's repeated defiance of the order to omit Jeske and Vargas warrants sanctions, dismissal of Count IV (although otherwise meriting dismissal) offers a just alternative. Count IV is **DISMISSED WITH PREJUDICE**.

### *V. Count V*

Count V alleges various negligence claims against each defendant. "Part one," pleaded "in the alternative," asserts that Tampa negligently hired or retained the law enforcement officers responsible for the alleged assault. Further, Bright alleges that Tampa knew that McCray was "not fit for the position involving contact with the public or other citizens." Although Bright cites "prior violent contact with the law and . . . other citizens," Bright specifies neither an instance of prior violence nor a previous disciplinary measure taken by Tampa for McCray's putative misconduct. (Doc. 83 at 12) Accordingly, Bright fails to state a claim for negligent hiring, negligent retention, failure to train, and the like. *See Vickers v. Georgia*, 567 F. App'x 744, 748 (11th Cir. 2014) (dismissing the claim alleging an unconstitutional policy because the plaintiff "did not allege any specific facts to support his conclusory allegation").

Also, in "part one" Bright alleges that each officer negligently failed to intervene "when each witness[ed] the unconstitutional excessive force being utilized by [ ] McCray." (Doc. 83 at 20) However, in Bright's account of events, no other officer was present when McCray arrested Bright; only Mahoney was present. Thus, no officer could have intervened when McCray arrested Bright because McCray

acted alone, and Bright includes no allegation that any officer was in a position to deter the use of force by McCray or any other officer, either during the arrest or at a later juncture. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924–25 (11th Cir. 2000) (explaining that failure to intervene negligence attaches only if "the officer is in a position to intervene and fails to do so"). In any event, apart from the appearance of "negligent failure to intervene" in the section heading, Bright alleges no facts establishing the elements of a negligent failure to intervene claim.

"Part two" of Count V alleges the negligence of defendants who have stipulated to dismissal. Count V is **DISMISSED WITH PREJUDICE**.

### *VI. Count VI*

Count VI alleges "excessive force by retaliation and or selective enforcement." In effect, Bright re-asserts Count I's excessive force claim. To the extent that Bright attempts to state a claim for selective enforcement, his claim fails to allege that, in enforcing a library or state policy, a state actor treated Bright differently from the state actor's treatment of a qualifying comparator. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 1000 (11th Cir. 1995).

Other of Bright's purported "claims," strewn throughout the count, fail because they include nothing more than conclusory legal assertions and fail to allege plausible facts that could establish a claim for relief. For example, Bright's Florida constitutional claim seeks money damages for violations of the Florida Constitution even though Florida waives no sovereign immunity for state-law constitutional torts, *Howlett v. Rose*, 496 U.S. 356 (1990), and Bright lacks a qualification necessary to sue

under Section 961.06, Florida Statutes, that is, Bright lacks status as a "wrongfully incarcerated person" with a felony conviction. Count VI is **DISMISSED WITH PREJUDICE**, and Bright's excessive force claim from Count VI merges with the claim in Count I.

## CONCLUSION

The defendants' motions (Doc. 88, 92) to dismiss are **GRANTED-IN-PART**. Count I is **DISMISSED WITH PREJUDICE** to the extent that the count alleges a First Amendment violation and to the extent that the count alleges a claim against Tampa. However, Bright alleges excessive force and battery claims against each officer in their individual capacities and to that extent the motion to dismiss is **DENIED**. Tampa is **DISMISSED** because Bright alleges no claim against Tampa, and Bright alleges conduct that constitutes "bad faith" by the officers. Because Bright has received several opportunities to amend the complaint, Counts II – VI are **DISMISSED WITH PREJUDICE**. Bright's motion (Doc. 119) for summary judgment is **DENIED**, and Bright's ancillary motions (Docs. 97, 111, 112, 116, 117, 124, and 126) are each **DENIED**.

## A CAUTION TO MR. BRIGHT

Litigation in federal court is difficult and requires timely compliance with applicable rules, including the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, and several procedural, discovery, and other orders. A judge cannot assist a party, even a pro se party, in conducting an action, and a

plaintiff enjoys only a limited opportunity to amend the complaint. Therefore, Bright is strongly advised — before amending the complaint — to obtain legal advice and assistance from a member of The Florida Bar.

ORDERED in Tampa, Florida, on May 27, 2020.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE